UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDMUND G. SANDERSON,

Plaintiff,

-v- 8:16-CV-644

FIRST LIBERTY INSURANCE CORPORATION,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

EDMUND G. SANDERSON
Plaintiff, Pro Se
7581 State Route 9
P.O. Box 2660
Plattsburgh, NY 12901

GOLDBERG, SEGALLA LAW FIRM — JONATHAN SCHAPP, ESQ., SHARON ANGELINO, ESQ.
Attorneys for Defendant
665 Main Street, Suite 400
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

This is an insurance coverage dispute between pro se plaintiff Edmund G. Sanderson ("Sanderson" or "plaintiff") and defendant First Liberty Insurance Corporation ("First Liberty" or "defendant"), his homeowner's insurance carrier, over water and mold damage. Although plaintiff initially sought coverage for the loss from defendant in accordance with his policy, relations between the parties eventually broke down.

On January 6, 2016, Sanderson attempted to initiate suit in state court—he filed a Summons with Notice in Supreme Court, Clinton County, under index number 2016-00000023. Plaintiff's Summons with Notice named "Liberty Mutual Insurance" as the defendant in the action, but plaintiff did not serve this summons on defendant.

On May 4, 2016, Sanderson filed an Amended Summons with Notice in Supreme Court under the same index number. This time, plaintiff's Amended Summons with Notice named "First Liberty Insurance Corporation" as the defendant in the action. And this time, plaintiff effected service on defendant through the New York State Department of Financial Services in accordance with New York Insurance Law § 1212.

On June 6, 2016, First Liberty removed the action to the U.S. District Court for the Northern District of New York and thereafter moved to dismiss the action under Federal Rule of Civil Procedure ("Rule") 12(b)(4) and (6).[1] Plaintiff opposed and cross-moved under Rules 4 and 15 seeking leave to amend or correct his Amended Summons with Notice to relate back to the date of his original filing of the Summons with Notice.

In a Memorandum–Decision & Order dated April 19, 2017, First Liberty's motion to dismiss was denied, Sanderson's motion for an extension of time to perfect service was granted, and his complaint was deemed to be the operative pleading in this action. The April 19 MDO further directed defendant to answer or otherwise respond to plaintiff's complaint.

On May 9, 2017, First Liberty responded to Sanderson's complaint by moving for partial dismissal under Rule 12(b)(6). Although it conceded that plaintiff had stated at least a

[1] A defendant who has not been properly served may file a motion to dismiss for "insufficient process," FED. R. CIV. P. 12(b)(4), or for "insufficient service of process," FED. R. CIV. P. 12(b)(5). First Liberty appears to have also noticed its motion under Rule 12(b)(6) in an effort to properly raise the policy's statute of limitations as a pre-answer defense.

plausible claim for breach of the insurance contract, defendant sought to eliminate plaintiff's various extra-contractual theories of relief and his requests for special damages.

On June 2, 2017, Sanderson reacted to First Liberty's partial dismissal motion by filing an amended complaint. Three days later, plaintiff followed up by filing a single-paragraph opposition memorandum requesting that defendant's Rule 12(b)(6) motion be denied as moot in light of his newly filed amended pleading.

Thereafter, First Liberty replied with a request that the merits of its partial dismissal motion be considered in light of the revised allegations set forth in Sanderson's amended complaint.[2] According to defendant, "the Amended Complaint does not correct most of the defects and improprieties in the original Complaint."

The motion will be considered fully briefed on the basis of these submissions and decided without oral argument.

## II. BACKGROUND

Sanderson purchased homeowner's insurance policy number H36-228-085080-70 from First Liberty to cover his home in Plattsburgh, New York. The policy's effective period ran between January 25, 2013 and January 25, 2014.

On January 7, 2014, Sanderson discovered some water and mold damage. As plaintiff explains, "[w]ater escaped from the dwelling plumbing system through a burst 3/4 inch domestic cold water pipe located in the ceiling space above the first floor

---

[2] On June 19, 2017, First Liberty filed yet another partial dismissal motion. According to that two-page filing, defendant sought not to add anything new to its argument but had rather submitted a second motion "in an abundance of caution so as not to be in default in response to the Amended Complaint." In response to this additional filing, plaintiff submitted an additional, ten-page "reply" memorandum. Because the dismissal motion will be considered in light of plaintiff's amended complaint, defendant's June 19 motion will be denied as moot. However, plaintiff's additional submissions will be considered as part of resolving defendant's June 2 motion to dismiss.

bathroom." Plaintiff timely sought coverage for the loss from First Liberty in accordance with the policy and was assigned claim number 028787581.

On January 16, 2014, Sanderson hired a public adjuster to assist him in settling his loss claim. At some point, however, plaintiff "suspend[ed]" the adjuster's services and elected to "self-represent." Elsewhere in the amended complaint it appears that plaintiff became concerned about communications between defendant and the adjuster he had hired.

In addition, Sanderson alleges that Christopher Collyer ("Collyer"), First Liberty's own claims representative, repeatedly made gross errors in his calculations and measurements of plaintiff's dwelling that amounted to fraud. Eventually, plaintiff provided to defendant a self-prepared "dwelling estimate, contents estimate, other expenses estimate and ordinance or law estimate."

On January 6, 2016, First Liberty sent to Sanderson a letter explaining that his loss estimate was substantially larger than defendant's own determination. Accordingly, defendant informed plaintiff that it was invoking the "appraisal process" in the contract.

Under this contractual appraisal process, each party to the contract was permitted to select a competent appraiser, and they in turn would agree on an "umpire." Each party's appraiser would then separately set the amount of loss, and any difference between the two estimates would be resolved by the umpire.

According to Sanderson, the parties eventually reached "a loss settlement agreement on March 4, 2016 on the dwelling, contents, additional living expenses and miscellaneous expenses." In particular, plaintiff's amended complaint states that, after the applicable policy deductible, defendant agreed to pay to plaintiff $111,181.

However, Sanderson appears to allege that this payment from First Liberty never actually occurred. Rather, documents attached to plaintiff's amended pleading suggest that the parties continued sparring over the loss amount as well as whether plaintiff had provided sufficient documentation of certain additional expenses he claimed to have incurred.

Finally, on April 19, 2016, First Liberty sent to Sanderson a final offer to settle his claim with a net payment to plaintiff of $89,633.96. It appears plaintiff rejected this offer in favor of filing suit.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts

stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

The basic pleading requirements set forth above apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (internal quotation marks and footnote omitted). Even a pro se plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. See id. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Sanderson's amended complaint purports to assert ten causes of action: Breach of the Policy's Implied Covenant of Good Faith and Fair Dealing ("Count One"); Nonpayment of 1st Agreed ACV Loss Settlement ("Count Two"); Nonpayment of 2nd Agreed ACV Loss Settlement ("Count Three"); Hindrance of Performance of Conditions Precedent ("Court

Four"); Breach of the Contract's Implied Promise of Peace of Mind ("Count Five"); Tortious Interference with Public Adjusting Contract and Business Relations ("Count Six"); Tortious Insurance Bad Faith ("Count Seven"); NYS General Business Law § 349 Deceptive Practices ("Count Eight"); Declaratory Judgment Ordinance or Law ("Count Nine"); and Declaratory Judgment Formation of 2nd Loss Settlement Agreement ("Count Ten"). Even mindful of plaintiff's pro se status, almost all of these causes of action must be dismissed.

Count One alleges a breach of the implied covenant of good faith and fair dealing. "Under New York law, there is a covenant of good faith and fair dealing implied in all contracts." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 298 (S.D.N.Y. 2012). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. at 298-99 (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002).

Importantly, however, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris, 310 F.3d at 81. Accordingly, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Fleisher, 858 F. Supp. 2d at 299 (citation omitted).

The non-conclusory factual allegations asserted in Count Two and Count Three of Sanderson's amended complaint set forth alleged breaches of the written insurance contract between the parties. Notably, however, the breach of the contract's implied covenant set

forth by plaintiff in Count One does not identify a set of facts that are distinct from the factual pattern underlying these express breach of contract claims. See, e.g., Cruz v. FXDirectDealer, LLC (FXDD), 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."). Accordingly, Count One will be dismissed.

Count Four and Count Five suffer from the same deficiency. Count Four asserts a claim for "hindrance of performance of conditions precedent" while Count Five asserts a breach of the "implied promise of peace of mind." Upon review, these claims are also duplicative of Sanderson's express breach of contract claims. Accordingly Count Four and Count Five will also be dismissed.

Count Six asserts a claim for tortious interference. "Under New York law, the elements of tortious interference with business relations are: (1) [plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." JBCHoldings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 535 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

Sanderson's amended complaint finds fault in both the conduct of the public adjuster he hired *and* First Liberty, the defendant in this action, essentially accusing the pair of colluding against him. Although this claim presents a closer question than many of the others, plaintiff nevertheless fails to state a claim.

Sanderson asserts that the public adjuster used information provided by First Liberty to attempt to convince plaintiff to settle his claim for less than he claims it otherwise would have been worth. In response, plaintiff alleges that he refused to continue working with the adjuster, resulting in a dispute over partial payment for his services. Plaintiff alleges that defendant then "advised the public adjuster that it would not make payment to plaintiff of the agree loss settlement amount until plaintiff settled plaintiff's dispute with the public adjuster regarding the public adjuster's claimed fees."

These allegations describe two disputes over two different contracts, not dishonest, unfair or improper interference with one. Sanderson clearly disagrees with the various loss calculations offered by First Liberty, but there is no indication that defendant acted in a tortious manner by providing plaintiff's adjuster with its own determination of the loss amount, which plaintiff was entitled to, and did, reject.

Later, when Sanderson chose to go it alone against First Liberty without the help of the adjuster whose services he had initially engaged, defendant refused to settle its dispute with plaintiff until plaintiff first settled his dispute with the adjuster. But the allegations in the amended complaint do not plausibly establish that this conduct by defendant was dishonest, unfair, or improper because the attached exhibits establish that payment for the adjuster's services was being negotiated as part of the total settlement amount between plaintiff and defendant. Accordingly, Count Six will be dismissed.[3]

Count Seven asserts claims for bad faith and fraud. "A fraud-based cause of action may lie . . . where the plaintiff pleads a breach of a duty separate from a breach of the

---

[3] The conclusion would be the same if this claim were treated as two, distinct sub-claims under New York law. Ahluwalia v. St. George's Univ., LLC, 63 F. Supp. 3d 251, 265-66 (E.D.N.Y. 2014).

contract." LBBW Luxemburg S.A. v. Wells Fargo Secs. LLC, 10 F. Supp. 2d 504, 521 (S.D.N.Y. 2014) (citation omitted). For instance, "if a plaintiff alleges that [he] was inducted to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." Id. However, "[f]raud claims must be dismissed as duplicative of contract claims where the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." Id. (internal quotation marks omitted).

Sanderson's fraud and bad faith claim alleges that Collyer, a First Liberty employee with decades of professional experience in the field of insurance claims, deliberately and repeatedly calculated incorrect loss estimates for plaintiff's property. Again, however, this relates to defendant's discharge of its duties and obligations under the express contract existing between the parties; that is, defendant's obligations to perform under the homeowner's insurance agreement itself, and is therefore not independently actionable as a tort claim. LBBW Luxemburg S.A., 10 F. Supp. 3d at 521 ("Fraud claims must be dismissed as duplicative of contract claims where 'the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract."). Accordingly, Count Seven will be dismissed.

Count Eight alleges First Liberty engaged in deceptive practices in violation of New York General Business Law § 349. "New York law declares unlawful '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" PB Americas Inc. v. Cont'l Cas. Co., 690 F. Supp. 2d 242, 251 (S.D.N.Y. 2010) (quoting N.Y. Gen. Bus. Law § 349).

"To state a cause of action under § 349, a plaintiff must assert (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." PB Americas Inc., 690 F. Supp. 2d at 251 (citations and internal quotation marks omitted).

Importantly, however, "[t]he focus of § 349 cases is whether the alleged deceptive practice was 'consumer oriented.'" PB Americas Inc., 690 F. Supp. 2d at 251. And in Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, "the New York Court of Appeals expanded on the consumer oriented focus [of this provision] by stating that [p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute." Id. (citation and internal quotation marks omitted).

In other words, a defendant cannot be held liable pursuant to § 349 where "the disputed private transaction does not have ramifications for the public at large." PB Americas Inc., 690 F. Supp. 2d. at 252 (quoting Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004)).

The allegations in the amended complaint are insufficient to plausibly allege that First Liberty's conduct has the sort of broad impact on consumers at large that gives rise to a viable § 349 claim. Indeed, courts in this Circuit have repeatedly held that these kinds of claims—arising from disputes between policy holders and their insurance companies over what is covered under the policy at issue—"are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to § 349." PB Americas, Inc., 690 F. Supp. 2d at 252 (collecting cases). Accordingly, Count Eight will be dismissed.

Count Nine and Count Ten assert claims for declaratory judgment. Importantly, however, "[d]eclaratory judgments . . . are remedies, not causes of actions." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). Accordingly, Count Nine and Count Ten will be dismissed.

Finally, First Liberty's initial moving papers argued that Sanderson cannot receive the "punitive damages, double damages, attorneys' fees and costs, [and] special damages" pleaded in his complaint. Notably, a review of plaintiff's amended complaint reveals that plaintiff has removed references to "punitive" or "double" damages, obviating any further discussion of that topic.

However, three of Sanderson's damages requests bear brief discussion. First, plaintiff's claims for "consequential damages" must be dismissed. "In addition to general contract damages—i.e., damages that flow from the natural and probable consequences of the breach—a plaintiff asserting a breach of contract claim may also recover 'special' or 'consequential' damages, which compensate for 'additional losses.'" East Coast Res., LLC v. Town of Hempstead, 707 F. Supp. 2d 401, 410 (E.D.N.Y. 2010) (citations omitted).

Sanderson has not identified any provision in his homeowner's policy suggesting any special damages would be available in the event of a breach, see Cont'l Info. Sys. Corp., 2003 WL 145561, at *4 (noting that New York courts take into consideration whether there existed a specific provision in the policy itself permitting recovery [of consequential damages] for the loss" and collecting cases), or alleged that any such damages were within the parties' contemplation at the time of contracting. Compare, e.g., Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014) (finding claim for consequential damages sufficiently pleaded where plaintiff alleged that a "loss of business

income" resulting from defendant's failure to honor the insurance claim was "within the contemplation of the parties herein as the natural probable result of a breach" at the point when the parties renewed the contract); with Banco Popular N. Am. v. Lieberman, 75 A.D.3d 460, 462-63 (N.Y. App. Div. 1st Dep't 2010) (dismissing consequential damages claim for failure to allege such damages were "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (citation omitted)). Accordingly, plaintiff cannot recover consequential damages in this action.

Second, Sanderson's attempt to recover damages for "emotional distress" must also be dismissed. See, e.g., Trikas v. Univ. Card Servs. Corp., 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005) ("Under New York law, . . . mental distress / emotional damages . . . are not available for a breach of contract claim." (citations omitted)); Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) ("[E]motional distress is not a proper item of damages for breach of contract, even if the contract was breached in bad faith."). Accordingly, plaintiff cannot recover damages for emotional distress in this action.

Third, Sanderson seeks attorney's fees and costs. However, "[i]t is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 324 (N.Y. 1995); see also U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991) ("There is no . . . right to an award of attorney's fees on an ordinary claim of breach of contract."). Accordingly, plaintiff cannot recover attorney's fees and costs in this action.

**V. CONCLUSION**

Sanderson's amended complaint plausibly alleges that First Liberty breached certain provisions of the homeowner's insurance policy it issued to him. However, the allegations in plaintiff's operative pleading fail to establish that defendant's alleged non-performance under the agreement amounted to any independently tortious behavior.

Therefore, it is

ORDERED that

1. First Liberty's partial motion to dismiss is GRANTED;

2. Count One, Count Four, Count Five, Count Six, Count Seven, Count Eight, Count Nine, and Count Ten are DISMISSED;

3. Sanderson's claims for special damages are DISMISSED;

4. Sanderson's breach of contract claim (pleaded as Count Two and Count Three) REMAINS for discovery;

5. First Liberty is directed to file an answer to Sanderson's amended complaint in accordance with the Federal Rules of Civil Procedure; and

6. The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.

United States District Judge

Dated: November 7, 2017
Utica, New York.